12562

FIRST & MERCHANTS' NAT. BANK ET AL. v. HAMPTON
LOAN & EXCHANGE BANK

(145 S. E., 219)

*Mr. J. W. Manuel,* for appellant,

*Mr. J. A. Mace*, for respondents,

January 15, 1929.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

This is an appeal from a judgment in favor of the plaintiffs, entered upon a verdict in their favor, directed by his Honor, the presiding Judge, Hon. S. W. G. Shipp.

The facts, practically undisputed, appear to have been as follows: On July 8, 1926, the plaintiffs, operating as the Richmond County Clearing Association (hereinafter· referred to as the Richmond bank), forwarded to the Hampton Loan & Exchange bank (hereinafter referred to as the collecting bank) certain items for collection, aggregating $566.58. All of them were checks by depositors drawn upon the Bank of Hampton (hereinafter referred to as the drawee bank), except one item of $22, a check upon the collecting bank itself. The items were received by the collecting bank on July 9th, and all of the checks were immediately presented to the drawee bank for payment, except of course the $22 check drawn upon the collecting bank. The two banks then had a clearance settlement, upon which the drawee bank gave to the collecting bank its draft for the clearance balance upon a bank in Savannah. The collecting bank, being satisfied with the validity of the draft just mentioned, after deducting $1.40 exchange, transmitted to the Richmond bank its check upon a bank in New York for

$565.18 ($566.58 less $1.40 exchange). Before the collecting bank had returns from the draft of the drawee bank on the Savannah bank, namely, on Monday, July 12th, the drawee bank failed to open for business, and we assume is in process of liquidation. The Savannah bank, learning of the collapse of the drawee bank, refused payment of the draft upon it referred to above. The collecting bank, having been notified of such refusal, stopped payment of the check drawn by it upon the New York Bank, transmitted to the Richmond bank in settlement of the collections. The Richmond bank then charged back to its customers who had transmitted them to it the items which it had forwarded to the collecting bank, and brought suit against the collecting bank upon the check which it had transmitted on the New York bank in settlement of the collection which the collecting bank assumed that it had made.

At the close of all the evidence, the presiding Judge directed a verdict in favor of the plaintiffs, upon the ground that the collecting bank had no right to receive anything but money in payment of the items received by it for collection, and, having received the draft of the drawee bank upon the Savannah bank in payment, and transmitted its check on the New York bank in settlement, it assumed all risk of loss, and was liable on its check.

The general rule in force in July, 1926, is as stated by his Honor the Circuit Judge, that, in the absence of express agreement or of a recognized usage between the parties, a collecting bank can receive nothing but money for items transmitted for collection, and is itself liable for a loss resulting from a deviation from this acknowledged obligation. Morse, Banks (6th Ed.) § 247. (Affected by Act of 1927, 35 Stat. 369.) See, also, *Stone v. Wachovia Bank & Trust Co.*, 145 S. C., 166, 143 S. E.. 27; *Ryan v. Bank*, 142 S. C., 231, 140 S. E., 593; *Merchants' Nat. Bank of Baltimore v. Bank*, 135 S. C., 339, 133 S. E., 910. The defendant sought by testimony of

doubtful admissibility and of weak probative value to establish a custom, usage, or agreement which authorized collecting banks, correspondents of the Richmond bank, to accept a draft or credit of the drawee bank as a conditional payment, in lieu of cash.

Even if such custom, usage, or agreement had been established, it would not have protected the defendant under the evidence in this case, for the facts, as testified to by the cashier of the collecting bank, do not present a case for its application. It appears that the collecting bank held items against the drawee bank in excess of the items held by the latter against it, and that, in a clearance settlement, the latter, as debtor to the former, settled the balance with a check upon the Savannah bank. It may have been more or less than the total of the items transmitted by the Richmond bank to the collecting bank; the amount of it does not appear in the record. It could hardly in reason have been for the exact amount. If it had been for more than that amount, it might with reason be argued that the amount of the transmitted items was embraced in that check; if it had been for less, it is clear that it could not have been.

In *Spokane & Eastern Trust Co., v. U. S. Steel Co.* (C. C. A.), 290 F., 84, it is held that, where a bank presents for clearance checks which it owns and others which it holds for collection only, the amount due on the checks owned by it should be first applied to the payment of checks which were drawn upon it, which it owed, and which were presented against it at the time of the same clearance.

In the particular clearance of July 9, 1926, in the case at bar, it does not appear that the transmitted items were the only checks presented by the collecting bank to the drawee bank. It does appear that at the same time the drawee bank held certain items payable by the collecting bank which were presented for clearance, and that the difference between all the items presented by the collecting bank, including checks

owned by it and checks held for collection, and the items presented for clearance, and that the difference between all was settled by the draft of the drawee bank on the Savannah bank in favor of the collecting bank.

It may have been that the items presented by the drawee bank, in the clearance settlement, exceeded in amount the items presented by the collecting bank; in that event the collecting bank would necessarily have been paying a part of its obligations, the items held by the drawee bank against it, with the items which it held for collection, and the draft on the Savannah bank would have been less than the total of the items transmitted for collection.

To illustrate: Suppose the collecting bank presented checks on the drawee bank owned by it amounting to $300, and checks held for collection amounting to $600, and that the drawee bank presented checks held by it on the collecting bank for $500; the drawee bank would pay the difference, $300 plus $600=$900 less $500=$400—$200 *less* than the total of the items held for collection.

On the other hand: Suppose the collecting bank presented checks on the drawee bank amounting to $300, and checks held for collection amounting to $600, and that the drawee bank presented checks owned by it on the collecting bank for $200; the drawee bank would pay the difference, $300 plus $600=$900 less $200=$700—$100 *more* than the total of the items held for collection, which would necessarily be included in the clearance settlement check.

Under this last hypothesis, if the forwarding bank had authorized the collecting bank to accept a check of the drawee bank as a conditional payment, in lieu of cash, there would be force in the contention of the collecting bank that it was protected in the event of the insolvency of the drawee bank. The Court is left to surmise that this condition prevailed. Certainly a custom, usage, or express agreement such as is claimed in this case by the collecting bank will not protect it in a case where it has settled its own obligations

with the items held by it for collection, and accepted a draft upon the drawee bank for less than the sum total of the items.

The judgment of this Court is that the judgment of the Circuit Court be affirmed.

MR. CHIEF JUSTICE WATTS, MESSRS. JUSTICES BLEASE and STABLER and MR. ACTING ASSOCIATE JUSTICE RAMAGE concur.