FIRST OF AMERICA BANK-NORTHEAST ILLINOIS, N.A., Plaintiff-Appellee, v. RANDY J. BOCIAN, Indiv., and d/b/a Zurich Ltd., Defendant and Counterdefendant (Eric Christenson, Inc., Defendant and Counterplaintiff-Appellant).

Second District   No. 2—92—0663

Opinion filed May 28, 1993.

Dennis P. Daly, of Daly & Daly, of Waukegan, for appellant.

John W. Quinn, of Churchill, Baumgartner & Phillips, Ltd., of Grayslake, for appellee.

JUSTICE WOODWARD delivered the opinion of the court:

Defendant, Eric Christenson, Inc., appeals from the order of the circuit court granting summary judgment for plaintiff, First of America Bank-Northeast Illinois, N.A. (bank), and denying defendant's cross-motion for summary judgment. Defendant Christenson filed a counterclaim against Randy J. Bocian, d/b/a Zurich, Ltd. A default judgment was entered against counterdefendant Bocian, who is not a

party to this appeal. The court entered a money judgment against defendant Christenson and for plaintiff in the amount of $12,334.31.

Defendant contends that it was error for the trial court to enter summary judgment against defendant as drawer of a check made out to Zurich, Ltd. (Bocian), and deposited by Bocian in the plaintiff bank. Relying on various provisions of articles 3 and 4 of the Uniform Commercial Code (Code) (Ill. Rev. Stat. 1989, ch. 26, pars. 3—101 et seq., 4—101 et seq.), defendant argues that the bank is not entitled to a money judgment against him as the drawer of a check, where the check was deposited in the bank customer's checking account which became overdrawn when the bank drew against that account to pay checks issued by the customer, and where defendant drawer had stopped payment on his check and the bank did not receive payment on the drawer's check.

Initially, we note that, in reviewing a trial court's entry of summary judgment, the sole function of the reviewing court is to determine whether the trial court correctly found that there were no genuine issues of material fact and, if not, whether the trial court correctly entered judgment as a matter of law based upon pleadings, depositions, admissions and affidavits on file. Guenther v. G. Grant Dickson & Sons, Inc. (1988), 170 Ill. App. 3d 538.

The facts are essentially undisputed. The record discloses that Bocian, d/b/a Zurich, Ltd., had a bank account with plaintiff. On October 8, 1990, defendant executed and delivered to Bocian a check drawn on the Bank of Waukegan and payable to Zurich in the amount of $28,800. The check represented a payment toward the construction of a pole barn on defendant's property. Bocian (Zurich) deposited the check in his account at the plaintiff bank. As a result of an alleged breach of contract, defendant terminated his agreement with Zurich and stopped payment of the check. Between the time of Bocian's deposit, on October 9, and the time that the bank received notice of the stop-payment order on October 12, 1990, the bank honored certain checks written by Bocian against the account amounting to $12,334.31, the amount of damages the bank sought in its motion for summary judgment. Plaintiff's motion was supported by an affidavit of plaintiff's compliance officer, Gwen Aquino, and documentary exhibits. According to the bank, as a result of honoring the checks, Zurich's account became overdrawn in an amount over $13,000.

The trial court denied defendant's cross-motion for summary judgment, granted plaintiff's motion for summary judgment and awarded plaintiff a money judgment of $12,334.31.

On appeal, defendant points out that plaintiff had the option of granting provisional credit to its customer who deposited the check; that it could refuse to pay checks drawn on an overdrawn account; and that it could reverse that credit and seek recourse against its customer. In view of these options, defendant argues that the bank should suffer the losses, if any, resulting from its decision to honor the customer's checks. Citing no mandatory authority (other than his own construction of the Code provisions), defendant concludes that the bank has no recourse against him as "drawer" of the check since it was not a holder in due course.

Plaintiff advances several arguments why the bank is a holder in due course (HDC) notwithstanding defendant's stop-payment order and why plaintiff has recourse against the maker. Plaintiff relies on the provisions of the Code and an older appellate opinion (*First National Bank v. Bauer Poultry Corp.* (1952), 345 Ill. App. 315). Defendant has chosen to ignore the well-established authority of numerous jurisdictions concerning the bank's status as an HDC under the Code. Although there is surprisingly little modern Illinois authority directly on point, our further research persuades us that plaintiff was an HDC and could indeed proceed against defendant as drawer of the check.

■ Illinois adopted articles 3 and 4 of the Uniform Commercial Code in 1961 (see Ill. Ann. Stat., ch. 26, pars. 3—101, 4—101 (Smith-Hurd 1963)). Sections 3—302(1) and (4) of the Code provide that an HDC is a holder who takes the instrument (a) for value; and (b) in good faith; and (c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person; a purchaser of a limited interest can be a holder in due course only to the extent of the interest purchased. (Ill. Rev. Stat. 1989, ch. 26, pars. 3—302(1), (4).) If the bank was an HDC as a result of the deposit of the check *and* the subsequent credit applied and advances made, it took the check free from all defenses of any party to the instrument with whom the holder has not dealt except those real defenses enumerated in section 3—305 of the Code (Ill. Rev. Stat. 1989, ch. 26, par. 3—305). The enumerated defenses include: infancy, incapacity, duress, illegality, misrepresentation, or discharge in insolvency or other discharge of which the holder has notice when he takes the instrument. (See *Peoria Savings & Loan Association v. Jefferson Trust & Savings Bank* (1980), 81 Ill. 2d 461, 467.) Defendant has not asserted any of these defenses, and any other personal defenses are of no avail to defendant if the bank was an HDC. See *Washington*

*Bank & Trust Co. v. Landis Corp. T/A Sofroney Realtors* (1983), 112 Ill. App. 3d 182, 185.

Section 4–208 of the Code provides in pertinent part:
"A bank has a security interest in an item and any accompanying documents or the proceeds of either

(a) in case of an item deposited in an account to the extent to which credit given for the item has been withdrawn or applied; [or]
\* \* \*

(c) if it makes an advance on or against the item." (Ill. Rev. Stat. 1989, ch. 26, par. 4–208.)

Additionally, a bank has given "value" for purposes of determining its status as an HDC "to the extent that it has a security interest in an item." Ill. Rev. Stat. 1989, ch. 26, par. 4–209.

■ Notwithstanding the drawer's stop-payment order, we hold that the bank is an HDC because it took the check for value and without notice of any infirmity in the check (see Ill. Rev. Stat. 1989, ch. 26, pars. 3–303, 4–209) and the bank had a security interest in the item deposited to the extent that it applied or withdrew credit for it or made advances against the deposited check (see Ill. Rev. Stat. 1989, ch. 26, par. 4–208). There is no contention that the bank did not take the check in good faith or with notice of the stop-payment order. The bank took the instrument for "value" because it extended credit, even though provisional, in reliance on the deposited check or allowed its depositor to make withdrawals against the uncollected funds; the bank acquired a security interest in the instrument.

Based on the above-cited Code provisions, this result has obtained in numerous jurisdictions construing similar provisions of the Code, and these provisions constitute a codification of pre-Code practice. (See, *e.g.*, *American Exchange Bank v. Cessna* (N.D. Okla. 1974), 386 F. Supp. 494, 497 (bank was HDC and could recover from maker amounts advanced to payee before payment had been stopped); *Exchange National Bank v. Beshara* (Fla. Dist. Ct. App. 1970), 236 So. 2d 198 (bank acquired security interest and was HDC with recourse to drawer when it immediately credited depositor's account and depositor was able to draw checks against its account before drawer stopped payment); *St. Cloud National Bank & Trust Co. v. Sobania Construction Co.* (1974), 302 Minn. 71, 224 N.W.2d 746 (bank was HDC and had recourse against drawer when it granted credit to depositor based on check deposited and made payment on checks drawn against the account during the interval between deposit of check and notice of drawer's stop payment order; the bank had a security inter-

est in the check and took check for value; Code continues prior practice); *Washington Trust Co. v. Fatone* (1968), 104 R.I. 426, 244 A.2d 848 (bank was HDC and had security interest to extent of withdrawals made in item delivered to bank for collection and as a matter of courtesy bank permitted withdrawals before item was collected); *Citizens National Bank v. Fort Lee Savings & Loan Association* (1965), 89 N.J. Super. 43, 213 A.2d 315 (frequently cited decision held that bank was HDC and had recourse against drawer when it allowed checks to be cashed against depositor's low or overdrawn account prior to notice of stop payment); *Lynnwood Sand & Gravel, Inc. v. Bank of Everett* (1981), 29 Wash. App. 686, 630 P.2d 489 (despite stop-payment order, bank became HDC and took for value by giving provisional credit applied to overdraft in depositor's account in allowing withdrawals against uncollected check funds; in effect, bank made a loan to its customer and gave "value" for the check even if the credit was provisional).

In *Bauer Poultry* (345 Ill. App. 315), a pre-Code case, the court determined that the plaintiff bank was a holder in due course where it had cashed a check, drawn on another bank and regular and complete on its face, for a payee; the bank had no notice of any infirmity in the check and was entitled to judgment against the drawer although payment had been stopped by the drawer. See *National Bank v. Sachs* (1942), 314 Ill. App. 570 (abstract of opinion) (in suit against drawer of check, bank which accepted depositor's check and allowed customer to draw checks on the account before receiving stop-payment notice was HDC up to amount of overdraft); see also *Hebel v. Ebersole* (7th Cir. 1976), 543 F.2d 14 (relying in part on *Bauer Poultry*, court found holder in due course had claim against drawer of check who had stopped payment as though it were a promissory note).

In view of the foregoing decisions, we have determined that the bank was an HDC. In addition, the bank as HDC could proceed against its customer (payee) or the drawer of the check as it did in the present case. Contrary to defendant's assertion, we find no Illinois authority which prevents the bank as HDC from proceeding against the drawer. An HDC of an instrument upon which payment has been stopped nevertheless has a right to recover from the drawer of the instrument. *People v. Lombardi* (1973), 13 Ill. App. 3d 754; Ill. Rev. Stat. 1989, ch. 26, pars. 3—305, 4—403; see *Bank of Costa Mesa v. Losack* (1977), 74 Cal. App. 3d 287, 141 Cal. Rptr. 550 (payment can be stopped but drawer remains liable on the instrument to the HDC); see also Ill. Ann. Stat., ch. 26, par. 4—403, Illinois Code Comment, at 532 (Smith-Hurd 1963).

500

We conclude that plaintiff bank was an HDC and had recourse against defendant as the drawer of the check. The circuit court correctly granted summary judgment as a matter of law to plaintiff. See *Purtill v. Hess* (1986), 111 Ill. 2d 229, 240.

The judgment of the circuit court is affirmed.

Affirmed.

UNVERZAGT and QUETSCH, JJ., concur.